# GRIFFITH *v.* LEXINGTON TERMINAL RAILROAD CO.

1. It appearing from the plaintiff's petition that he voluntarily assumed to perform for his master duties so perilous as to subject him to imminent danger to life and limb, and no facts being alleged which support the charge that the master was responsible for a resulting injury, the defendant's demurrer was properly sustained.

2. One who knowingly engages to do what no prudent man ought to risk his life in endeavoring to accomplish can not, if injury ensues, rely upon the law to throw around him the protection of a fiction that his employer impliedly undertook to take steps to minimize the hazard assumed, at least to the extent of making performance possible.

Submitted December 1,—Decided December 22, 1905.

Action for damages. Before Judge Holden. Oglethorpe superior court. April 17, 1905.

The question presented for determination in this case is whether or not the trial court erred in sustaining a general demurrer to the plaintiff's petition. He alleged that he received permanent physical injuries while in the service of the defendant railroad company in

the capacity of fireman and brakeman on its road, which extends from Crawford to Lexington, in this State. He further alleged, that he was under the direction and subject to the control of another of the company's employees, who acted both as conductor and engineer upon the only train operated on that road, and that it was his duty to fire the engine and also to leave it at certain points along the line in order to apply the brakes to the train, which was a train for the carrying of both freight and passengers. As to the circumstances under which he received his injuries, his petition furnishes the following account: In coming from Crawford to Lexington, there is, near the latter station, a considerable down-grade which makes it necessary that the brakes on the train should be applied in order to bring it to a stop at that station without injury to or strain on the engine or other machinery, especially when the train is in part made up of freight-cars or cars other than the regular passenger-coach, the train not being equipped with air-brakes. When freight-cars were attached between the engine and the passenger-coach, it was the plaintiff's duty to leave the engine at this point, while the train was in motion, stepping from the engine to the ground, and then to get upon the platform of the passenger-coach while the train was still in motion, and there apply the brakes. He had been working on the road in the dual capacity of fireman and brakeman for several years. On the day of the injury several heavy cars were attached to the engine in front of the passenger-coach; and when the train was coming down the decline or down-grade near Lexington, the plaintiff, in the performance of his aforesaid duties and in obedience to the orders of his superior, who had charge of the train and authority to give such orders, undertook to alight from the engine and to get upon the platform of the passenger-coach to apply the brakes. He stepped from the engine to the ground, and then attempted to get on the platform of the passenger-coach as it approached, but was thrown violently to the ground, and the coach ran over one of his feet. The "train, when he undertook to board the same, was moving at an unusually high rate of speed at this point, though petitioner was not aware of such unusual or dangerous rate of speed," and "just at that time passengers came out upon the platform of said passenger-coach, and even upon the bottom steps of the same, and in the way of petitioner, as he undertook to perform said duties and to obey said orders."

The plaintiff alleged that "the failure of said company to equip said train with air-brakes, the requiring of petitioner to alight from and to board a moving train, the running of such train at such dangerous rate of speed, knowing that petitioner was required to perform these duties, and the allowing of passengers to occupy the steps of the platform of the passenger-coach, under such circumstances, was each gross negligence in said company, and that his said injuries are the direct result of said negligence and due in no way to any fault or negligence on his part." Plaintiff was a strong, healthy man, thirty-two years of age.

*Hawes Cloud* and *Joel Cloud,* for plaintiff.

*Joseph B. & Bryan Cumming* and *Hamilton McWhorter Jr.,* for defendant.

CANDLER, J. (After stating the facts.) The plaintiff, a man of mature years, had been in the service of the defendant company for a number of years, engaged in performance of the perilous duties assigned to him. If his master wrongfully called upon him "to alight from and to board a moving train," running at an obviously dangerous speed, he should have declined to obey. Having voluntarily assumed the risk incident to the discharge of services which were obviously attended with danger, he effectually cut himself off from holding the company accountable for any injury he may thus have brought upon himself. He can not excuse his voluntary assumption of the risk on the occasion referred to in his petition by saying that a servant of the company who was his superior in authority ordered him to jump from the moving engine and board the passenger-coach while the train was still in motion. He was merely ordered by his superior to do what he had engaged himself to the company to do. Besides, if the order was an improper one because it exposed him to imminent peril, he should have declined to execute it, the danger being as apparent to him as to his superior.

The train was not supplied with air-brakes. This omission was not, as matter of law, a negligent failure of duty which the company was, relatively to him, bound to perform. A railway company is under no duty to equip its trains with the latest and most approved appliances, and the plaintiff does not undertake to assert, as matter of fact, that reasonably safe equipment necessarily includes the adoption and use of air-brakes. Even were this otherwise, the

petition discloses that the plaintiff knew that air-brakes were not supplied by his master, and it was for this very reason that he was called on by the company to perform the perilous feat of jumping from the engine in order to apply the hand-brakes upon the rear of the train. He remained in its service, well knowing of such increased risk, if any, to which the failure to equip the train with air-brakes subjected him, and is therefore not now in a position to complain that the company disregarded its duty to him to furnish reasonably safe appliances. He accepted this increased risk, if there was one, instead of refusing to imperil his life by the continual use of appliances which were inadequate to the emergencies of the enterprise in which he engaged.

Passengers came out upon the platform, even occupying the bottom steps of the coach, and were in the way of the plaintiff when he attempted to board it. That the defendant company was negligent in "the allowing of passengers to occupy the steps of the platform of the passenger-coach, under such circumstances," is a bare conclusion of the pleader, unsupported by the allegation of any fact or circumstance going to show wherein the company was remiss in performing any duty which it owed to the plaintiff. It is not negligence per se to fail to maintain such a surveillance over passengers as to render it impossible for them to get in the way of the employees whom a railway company engages to operate one of its trains. What precautions in this regard were, or were not, observed by the defendant can not be learned from the pleadings; nor does the petition disclose that the plaintiff was not familiar with the habits of passengers, under the regulations adopted by the carrier, touching their remaining within the coach while en route; nor that he did not have as much reason as did his superior to apprehend that they might leave their seats and go out upon the platform, where they might get in his way when he attempted to board the moving coach. He does not even assert that he did not at the time know of their presence, or that he had no opportunity of seeing them and noting their position before he undertook to mount the steps; nor does he in any way attempt to negative want of care on his part in assuming the risk of boarding the train while they were standing on the steps, in his way. For aught that appears, the company was not responsible for their presence there, and the plaintiff, though aware of their presence, deliberately took the chance of probable in-

jury in voluntarily endeavoring to board the train under the circumstances.

It was, he explains, at that time "moving at an unusually high rate of speed," though he "was not aware of such unusual or dangerous rate of speed." Why he was unaware that the train was running at an unusual and even a dangerous rate of speed is not disclosed. Accustomed, as he was daily, to performing the hazardous task of jumping off the engine and swinging on to the rear of the train while it continued its journey, he should have offered at least some excuse for not observing the speed of the train and realizing the danger of attempting to board it. If the engineer was chargeable with knowledge that the train was running at an unusual rate of speed, it would seem that the plaintiff ought as well to have known this fact. The danger present was different only in degree from that which he engaged himself to daily ignore. One who knowingly engages to do what no prudent man ought to risk his life in endeavoring to accomplish can not, if injury ensues, rely upon the law to throw around him the protection of a fiction that his employer impliedly undertook to take steps to minimize the hazard assumed, at least to the extent of making performance possible.

For the reasons above stated, we concur with the trial judge in the view that the plaintiff's petition did not set forth a cause of action.     *Judgment affirmed.     All the Justices concur.*